1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL GADDY,                    )  1:09-cv-01203-AWI-JLT HC
                                       )
12          Petitioner,                )  FINDINGS AND RECOMMENDATIONS
                                       )  TO DENY PETITION FOR WRIT OF
13      v.                             )  HABEAS CORPUS  (Doc. 1)
                                       )
14   A. HEDGPETH,                      )  ORDER DIRECTING THAT OBJECTIONS BE
                                       )  FILED WITHIN TWENTY DAYS
15          Respondent.                )
     _____)

16

17          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.

19                            **PROCEDURAL HISTORY**

20          Petitioner is in custody of the California Department of Corrections and Rehabilitation

21   ("CDCR") serving an indeterminate sentence of 32 years-to-life pursuant to a judgment of the

22   Superior Court of California, County of Kings (the "Superior Court").  On February 15, 2007,

23   Petitioner was convicted by jury trial of assault with malice aforethought and by means of force

24   likely to produce great bodily injury while undergoing a life sentence. (Cal. Pen. Code § 4500), and

25   battery on a non-confined person (Cal. Pen. Code 4501.5). (Doc. 22, Lodged Documents ("LD") 1, p.

26   2).  The jury also found that Petitioner had suffered a prior "serious" felony conviction and three

27   prior strike convictions.  (Id.).

28          Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth

1    Appellate District (the "5th DCA"), which, on April 30, 2008, in an unpublished decision, affirmed

2    Petitioner's conviction.  (LD 1).   On May 22, 2008, Petitioner filed a petition for review in the

3    California Supreme Court.  (LD 6).  On July 9, 2008,  the state supreme court denied Petitioner's

4    petition for review.  (LD 7).  Subsequently, Petitioner filed several state habeas proceedings in order

5    to exhaust additional claims raised herein, all of which were denied by the state courts.  (LD 2-5; 8-

6    13).

7           On July 7, 2009, Petitioner filed the instant petition, raising four grounds for relief: (1) the

8    trial court abridged Petitioner's federal due process rights by permitting the arresting officers to

9    proffer lay testimony regarding whether Petitioner was attempting to lift the victim over a railing so

10   to allow him to throw the victim onto the ground floor;  (2) the trial court erred in failing to sua

11   sponte instruct the jury on self-defense; (3) the sentence constitutes cruel and unusual punishment

12   under the Eighth Amendment; and (4) ineffective assistance of appellate counsel in refusing to raise

13   the issues of instructional error and cruel and unusual punishment.  (Doc. 1). Respondent's answer

14   was filed on January 14, 2010.   (Doc. 21).  On April 19, 2010, Petitioner filed his Traverse.  (Doc.

15   28).

16          Respondent concedes that the all grounds for relief in the petition have been fully exhausted.

17   (Doc. 21, p. 7).

18

19                                    **FACTUAL BACKGROUND**

20          The Court adopts the Statement of Facts in the 5th DCA's unpublished decision:

21          On November 13, 2005, defendant was an inmate at the California Substance Abuse
            Treatment Facility (SATF) at Corcoran State Prison in Kings County.  Defendant shared cell
22          203 with Freddy Green.  Cell 203 was located on the second tier of the building in which they
            were housed.  The second tier was 15 feet above the lower tier and bordered by a 43-inch
            railing.
23
            Around 2:50 p.m., Correctional Officers Mike Avila and Cecilia Clausing went to conduct a
24          search of cell 203.  After the control booth officer remotely opened the cell door, Officer
            Clausing told the inmates that their cell was to be searched.  Defendant responded, "hell no!
25          You guys ain't coming in here."

26          Officer Clausing told defendant and Green to step out of the cell so that it could be searched.
            Defendant and Green responded by assuming an "aggressive stance" or "bladed stan[ce]"
27          with "one foot in front of the other, elbow bent, fist clenched."

28          Officer Clausing sounded her personal alarm and both Officer Clausing and Officer Avila

ordered the inmates to get down in a prone position. When the inmates failed to comply, the officers took their canisters of pepper spray from their belts and sprayed the inmates' faces. Green, who was sprayed once in the face by Officer Avila, complied immediately and "proned out." Officer Clausing sprayed defendant in the face several times, discharging her entire canister of pepper spray, before defendant got down on his knees. Officer Avila then instructed defendant to get into a prone position.

While Officer Clausing handcuffed Green, Officer Avila attempted to handcuff defendant. Defendant pushed up, turned, and punched Officer Avila in the left eye. Stunned, Officer Avila backed up further down on the tier. Defendant pursued Officer Avila, swinging at the officer's head and facial area. Officer Avila slipped on water or pepper spray and fell on his back, hitting his head.

Defendant jumped on top of Officer Avila and continued to swing at his head and face. Eventually, Officer Avila managed to get out from under defendant. When he got up onto his feet, Officer Avila was next to the railing. Defendant wrapped his arms around Officer Avila's midsection and tried to lift him. Officer Avila thought defendant was trying to lift him over the railing. Officer Clausing, who was trying to pull defendant off Officer Avila, also described defendant as putting his arms around Officer Avila's torso and lifting him up over the railing. She noted that Officer Avila was leaning back with his back against the railing, as defendant was trying to pick him up.

Fearing for his life, Officer Avila held on to the railing to prevent himself from going over and falling to the concrete floor below. In the meantime, other officers arrived and helped assist Officer Clausing subdue defendant.

**Defense**

Defendant and Green both testified, in essence, they were victims of harassment by the correctional officers. According to the inmates, after they awoke around 6:30 a.m., they were taken to a different building while their cell was searched. After they were brought back to their cell around 1:30 p.m., they started to clean up and put away items that had been removed and restored to them after the search.

When Officer Avila and Officer Clausing came to search their cell that afternoon, defendant and Green asked why their cell was being searched and complained that their cell had already been searched that day and their cell was still a mess from the earlier search. They also requested to speak with the sergeant about the situation. Defendant and Green both denied that they had pornographic materials in the cell or coverings on their windows, which was the reason the officers gave in their testimony for why the search was to be conducted.

Officer Clausing declined to call the sergeant and ordered the inmates to step out of their cell. Although defendant and Green admittedly refused to comply with her repeated orders, they denied that they assumed an aggressive stance towards the officers. According to the inmates, when they refused to step out of their cell, Officer Clausing stepped into the cell and started spraying them with pepper spray. Green got down on his stomach, and defendant got down on his knees and then tried to maneuver down to his stomach in the small cell.

As defendant tried to get into the prone position, Officer Avila slammed defendant's head on the ground more than once and dragged him out of the cell. Defendant stood up and started struggling with Officer Avila, trying to the officer off him. Defendant denied trying to punch the officer. They continued to struggle outside the cell and defendant ended up with his back against the railing and Officer Avila in front of him. They continued to struggle and "wrestle" together until other officers arrived. Defendant denied that he ever tried to pick up Officer Avila.

1  (LD 1, pp. *-*).

2  **DISCUSSION**

3  **I.  Jurisdiction**

4  Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

5  to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of

6  the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362,

7  375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the

8  United States Constitution.  The challenged conviction arises out of the Kings County Superior

9  Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.

10 § 2241(d).  Accordingly, the Court has jurisdiction over this action.

11 On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

12 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

13 Lindh v. Murphy, 521 U.S. 320 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries

14 v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), cert. denied, 520 U.S. 1107 (1997), overruled on

15 other grounds by, Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed

16 after statute's enactment).  The instant proceedings were initiated by the filing of the original petition

17 on July 7, 2009, after the enactment of the AEDPA, and thus this case is governed by the AEDPA.

18 **II.  Legal Standard of Review**

19 A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he

20 can show that the state court's adjudication of his claim:

21  (1)  resulted in a decision that was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme Court of the United States; or

22
23 (2)  resulted in a decision that "was based on an unreasonable determination of
the facts in light of the evidence presented in the State court proceeding.

24 28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S.

25 at 412-413.

26 The first prong of federal habeas review involves the "contrary to" and "unreasonable

27 application" clauses of 28 U.S.C. § 2254(d)(1).  This prong pertains to questions of law and mixed

28 questions of law and fact.  Williams v. Taylor, 529 U.S. at 407-410;  Davis v. Woodford, 384 F.3d

628, 637 (9th Cir. 2004). A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. at 405. A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. at 141; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).

Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409). Section 2254(d)(1)'s reference to "clearly established Federal law" refers to "the governing legal principle or principles set forth by [the Supreme Court] at the time a state court renders its decision." Lockyer v. Andrade, 538 U.S. at 64; Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005).

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings. "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and

based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d),  the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991);  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v. Morgan, 313 F.3d at 1167.

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002);  Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

**III.  Review of Petitioner's Claims.**

The instant petition itself alleges the following as grounds for relief:

| | |
|---|---|
| **Ground One** | **Permitting Avila and Clausing to testify whether Petitioner was trying to lift Avila over the railing is not contrary to nor an unreasonable application of clearly established federal law** |
| **Ground Two** | **Petitioner's rights were not denied by the trial court's refusal to sua sponte instruct the jury on self-defense** |
| **Ground Three** | **Petitioner's sentence of 32 years to life made consecutive to Petitioner's earlier indeterminate sentence did not violate the Eighth Amendment's prohibition against cruel and unusual punishment** |
| **Ground Four** | **Petitioner was not denied the effective assistance of appellate counsel** |
| **Ground One** | **Permitting Avila and Clausing to testify whether Petitioner was trying to lift Avila over the railing is not contrary to nor an unreasonable application of clearly established federal law** |

The Court will consider each ground in turn.

| | |
|---|---|
| **Ground One** | **Permitting Avila and Clausing to testify whether Petitioner was trying to lift Avila over the railing is not contrary to nor an unreasonable application of clearly established federal law** |

Petitioner first contends that the trial court violated his federal constitutional rights in permitting Officers Avila and Clausing to present their lay opinions as to whether Petitioner was attempting to lift Avila over the railing.  Petitioner argued to the California Supreme Court that the trial court's admission of the officers' opinions "violated the federal constitution by admitting the opinion testimony, thereby invading the province of the jury in determining guilt and rendering the trial fundamentally unfair in violation of appellant's constitutional right to due process."  (LD 6, p. 17).  This contention is without merit.

Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding.  Estelle, 502 U.S. 62, 68, 112 S.Ct. 475, 477 (1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), cert. denied, 478 U.S. 1021 (1985).  Accordingly, incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional

rights are affected.  See Whelchel v. Washington, 232 F.3d 1197, 1211 (9th Cir. 2000) (citations omitted).  Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus proceeding. Estelle, 502 U.S. at 67; Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), *cert. denied,* 478 U.S. 1021 (1985).

Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the admission was fundamentally unfair and resulted in a denial of due process. Estelle, 502 U.S. at 72; Pulley v. Harris, 465 U.S. 37, 41 (1984); Walters v. Maas, 45 F.3d 1355, 1357 (9th Cir. 1995); Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993), *cert. denied*, 510 U.S. 1191 (1994); Gordon v. Duran, 895 F.2d 610, 613 (9th Cir.1990).  However, the failure to comply with state rules of evidence alone is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds.  Jammal v. Van de Kamp, 926 F.2d 918, 919-920 (9th Cir. 1991).  Only if there are no permissible inferences that the jury may draw from the evidence can its admission rise to the level of a due process violation.  Id. at 920.

In rejecting Petitioner's claim, the 5th DCA, after explaining that, under California law, trial judges retain discretion to admit opinion testimony, reasoned as follows:

> Here, the trial court could reasonably conclude that Officer Avila's and Officer Clausing's testimony about what defendant appeared to be doing when he had his arms around Officer Avila was admissible lay opinion.  Their opinion that defendant was trying to lift defendant over the railing was, in essence, a description of defendant's behavior.  They were attempting to describe how defendant appeared to be lifting the officer when he had his arms wrapped around him, as opposed, say, to embracing him like a boxer might when tired during a fight.  Indeed, Officer Clausing clarified on cross-examination that it did not appear like defendant and Officer Avila were simply in "an active bear-hug."  The trial court could reasonably find that allowing the officers to express their observations as an opinion was "a matter of practical necessity" because defendant's mannerisms were "too subtle to enable [the officers] accurately to convey them...in any other manner.' [Citations]."  (People v. Williams, 44 Cal. 3d [883,] at p. 915 [(1988)].)  The officers' statements conveyed a description of defendant's appearance and mannerisms to the jury which met both of the requirements of Evidence Code section 800: it was rationally based on their own perception, and it was helpful to a clear understanding of their testimony.
>
> ...
>
> Moreover, the officers never expressed an opinion regarding defendant's ultimate guilt or innocence of the alleged crimes.  Although defendant complains that the officers' opinions went to an ultimate issue for the jury to decide, as seen above, this does not render the officers' testimony inadmissible.  In short, the court acted well within its discretion in admitting the opinion testimony of Officer Avila and Office Clausing.

(LD 1, pp. 6-7).

1      Applying the standards discussed above to this record, the Court concludes that no federal

2  due process violation occurred.  Petitioner's counsel argued to the California Supreme Court that the

3  opinion testimony was relevant to two elements of assault with malice aforethought and by means of

4  force likely to produce great bodily injury while undergoing a life sentence: (1) malice aforethought,

5  and (2) use of force likely to cause great bodily injury.  (LD 6, p. 10).

6      Assuming, arguendo, the centrality of the opinion evidence to one or more elements of the

7  assault charge, the Court agrees with the 5th DCA that the admitted evidence was necessary in order

8  to clarify and distinguish the officers' testimony for the jurors regarding Petitioner's conduct with

9  Avila.  In admitting the lay opinions of Avila and Clausing, the court allowed the prosecution to

10  distinguish Petitioner's conduct in "lifting" Avila from a mere "bear-hug" or "wrestling" type of

11  embrace, where the parties may have been more stationary and the likelihood that one or both of the

12  combatants might fall over the railing to the first tier was greatly diminished.

13      As the 5th DCA noted, admitting the testimony was a matter of "practical necessity" in order

14  for the witnesses to accurately describe to the jury nuances of Petitioner's behavior toward Avila

15  within the larger context of an encounter that moved quickly from one location to another and

16  involved a series of rapid actions on the part of both individuals.  It seems clear that the trial court,

17  by admitting the evidence, was seeking to provide the jurors with the highest degree of detail and

18  specificity regarding Petitioner's conduct in a case where that jury would be asked to make findings

19  about both the gravity of Petitioner's conduct and his mental state when engaging in such behavior.

20      Moreover, Petitioner himself testified regarding his version of events.  The jury was

21  instructed extensively on how to weigh the credibility of witnesses and that it could find facts based

22  solely on a single witness's testimony.  Perhaps most importantly, the jurors were instructed that, as

23  to those witnesses who had offered opinions, the jurors "may but are not required to accept those

24  opinions as true or correct.  You may give the opinions whatever weight you think appropriate."  (LD

25  24, p. 175).

26      Under all of these circumstances, the Court cannot conclude that there were "no permissible

27  inferences" that the jury might have drawn from the challenged lay opinions.  Jammal, 926 F.2d at

28  919-920.  Accordingly, this claim does not rise to the level of a federal due process violation.  Id. at

920.

**Ground Two**          **Petitioner's rights were not denied by the trial court's refusal to sua sponte instruct the jury on self-defense**

Petitioner next contends that his constitutional rights were denied when the trial court refused to instruct the jury on the self-defense of necessity sua sponte.  Respondent argues that this claim is procedurally barred.  The Court agrees with Respondent.  However, the Court also rejects the claim on its merits.

A federal court will not review claims in a petition for writ of habeas corpus when the state court denied relief on those claims based on a state procedural law that is both independent of federal law and adequate to support the judgment.  Ylst v. Nunnemaker, 501 U.S. 797,  801, 111 S. Ct. 2590 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546 (1991).  "A district court properly refuses to reach the merits of a habeas petition if the petitioner defaults on the particular state's procedural requirements and is unable to demonstrate cause and prejudice or a fundamental miscarriage of justice."  Park v. California, 202 F.3d 1146, 1150 (9th Cir. 2000).  This doctrine of procedural default is based on concerns of comity and federalism.  Coleman, 501 U.S. at 730-32.

The mere occurrence of a procedural default will not necessarily bar a federal court from reviewing claims in a petition for writ of habeas corpus.  For the procedural default doctrine to apply and thereby bar federal review, the state court must also "'clearly and expressly' state that its judgment rested on a state procedural bar."  Harris v. Reed, 489 U.S. 255, 263, 109 U.S. 1038 (1989), citing Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S.Ct. 2633 (1985) (quoting Michigan v. Long, 463 U.S. 1032, 1041, 103 S.Ct. 3469 (1983)).

1.  State Law Procedural Ground - the Dixon Rule.

The first step in deciding whether there has been a procedural default is to determine whether the state court clearly and expressly denied relief on a state procedural ground.  Here, Petitioner pursued a direct appeal, but did not raise, in the context of that direct appeal, this instructional issue. (LD 6).  Rather, Petitioner presented this claim for the first time in his state habeas petitions filed in the Superior Court.  (LD 2; 8).  The Superior Court rejected this claim because it was not raised on appeal, citing In re Dixon, 41 Cal.2d 756, 759 (1953), in the decision on his first petition, and In re

Clark, 5 Cal.4th 750, 765-766 (1993), in the decision rejecting his second petition.  (LD 3; 9).    The 5th DCA subsequently rejected the claim, also citing Dixon.  (LD 5).

Dixon, expressly provides that:

> The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from the judgment of conviction.

Dixon, 41 Cal. 2d at 759. (LD 3, p. 1).  Pursuant to the Dixon rule, in a state habeas corpus proceeding, a California court will not review the merits of a claim if that claim could have been raised in a timely appeal, but was not.

As the last state court to give a reason for its judgment, the 5th DCA denied the claim unambiguously on state law procedural grounds, i.e., the Dixon rule.  The next step is to determine whether the Dixon rule is both independent of federal law and adequate to support the judgment. If it is, habeas relief is procedurally barred.

2.  Independence.

Even when a petitioner has violated a state procedural law, the procedural default doctrine does not bar federal habeas relief unless the state procedural law is both independent of federal law and adequate to support the judgment.  Coleman, 501 U.S. at 729-32, 735.  For a state procedural rule to be independent of federal law, "the state law basis for the decision must not be interwoven with the federal law."  La Crosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001) (citing Michigan v. Long, 463 U.S. at 1040-41, and Harris, 489 U.S. at 265); Morales v. Calderon, 85 F.3d 1387, 1393 (9th Cir. 1996) (quoting Coleman, 501 U.S. at 735).  A state law ground is interwoven with federal law if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed."  Park, 202 F.3d at 1152 (quoting Ake v. Oklahoma, 470 U.S. 68, 75, 105 S.Ct. 1087 (1985)).

The Ninth Circuit Court of Appeals has determined that, prior to 1998, the Dixon rule was not independent of federal law.  Park v. California, 202 F.3d 1146 (9th Cir. 2000).  In Park, the Ninth Circuit reasoned that because a fundamental constitutional error exception to the Dixon rule existed under state law, application of the Dixon rule necessarily involved consideration of federal law

1    issues and therefore was "interwoven with the federal law." Id. at 202 F.3d at 1152-53.  Two years

2    earlier, the California Supreme Court explicitly stated that it would no longer consider whether an

3    error alleged in a state petition constituted a federal constitutional violation.  In re Robbins, 18

4    Cal.4th 770, 811-812 & n. 32 (1998).  In making it clear that it would no longer consider federal law

5    in applying the Dixon rule and its exceptions, the California Supreme Court stated:

6           [W]e shall, in this case and in the future, adopt the following approach as our standard
            practice: We need not and will not decide whether the alleged error actually constitutes a
7           federal constitutional violation.  Instead, we shall assume, for the purpose of addressing the
            procedural issue, that a federal constitutional error is stated, and we shall find the exception
8           inapposite if, based upon our application of state law, it cannot be said that the asserted error
            led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury
9           would have convicted the petitioner.

10   In re Robbins, 18 Cal. 4th at  811-812 & n.32.

11          In 2003, the Ninth Circuit decided that the California Supreme Court's denial of a  habeas

12   petition for untimeliness constituted an independent and adequate state ground barring federal habeas

13   relief:

14          [W]e respect the California Supreme Court's sovereign right to interpret its state constitution
            independent of the federal law.  Applying Robbins prospectively, we affirm the district
15          court's determination that the California Supreme Court's post-Robbins denial of [a] state
            petition for lack of diligence (untimeliness) was not interwoven with federal law and
16          therefore is an independent procedural ground.

17   Bennett v. Mueller, 322 F. 3d 573, 583 (2003). Thus, application of the untimeliness bar is now

18   independent of federal law.

19          Although Bennett did not involve the Dixon rule per se, its rationale applies with equal force

20   to a post-Robbins application of the Dixon bar because it and the untimeliness bar are both subject to

21   analogous constitutional error exceptions and state court consideration of post-Robbins applications

22   of these bars no longer involves federal law. See La Crosse, 244 F.3d at 707, n. 29; Bennett, 322

23   F.3d at 1583; In re Robbins, 18 Cal. 4th at 811-812 & n.32. Thus, the Court concludes that a post-

24   Robbins invocation of the Dixon rule is independent of federal law.

25          To determine whether the state court's application of the Dixon rule is independent of federal

26   law in this case, the Court must look at the state decision invoking the Dixon rule.  See Bennett, 322

27   F. 3d at 582-83; Park 202 F.3d at 1153; La Crosse, 244 F. 3d at 707.  Here, the 5th DCA invoked the

28   Dixon rule when it denied Petitioner's habeas petition on March 13, 2008.  (LD 5).  Robbins was

1    decided nearly a decade before, on August 3, 1998.  Because the state court's application of the

2    Dixon rule was "post-Robbins," and therefore predicated *only* upon consideration of state law, it was

3    independent of federal law when applied to Petitioner's state habeas petitions.[1]

4            3.  Adequacy.

5            A state procedural rule on which the state relies to establish a procedural default must also be

6    "adequate to support the judgment."  Coleman, 501 U.S. at 735.   A state procedural law is adequate

7    to support the judgment when it is "well-established and consistently applied."  Bennett, 322 F.3d at

8    582 (citing Poland v. Stewart, 169 F. 3d 573, 577 (9th Cir. 1999)).   The question of whether a state

9    procedural default rule is well-established and  consistently applied is determined when the actual

10   default occurs, not when the state court applies its procedural rule to bar the petitioner's claim.

11   Fields v. Calderon, 125 F.3d 757, 760-61 (9th Cir. 1997); Calderon v. U.S. Dist. Ct. For E.D. of Cal.,

12   103 F.3d 72, 75 (9th Cir. 1996), cert. denied, 521 U.S. 1129, 117 S.Ct. 2532 (1997) (relevant time to

13   assess application of the Dixon rule is when petitioner "had an opportunity to raise the claims on

14   direct appeal").  See Calderon v. Bean, 96 F.3d 1126, 1131 (9th Cir. 1996), cert. denied, 520 U.S.

15   1204, 117 S.Ct. 1569 (1997) (evaluating the Dixon rule at the time petitioner filed a direct appeal).

16   Here, the relevant date is August 27, 2007, when Petitioner filed his opening brief on direct appeal.[2]

17   Thus, the appropriate inquiry is whether the Dixon rule was well-established and consistently applied

18   as of August 27, 2007.

19           a.  Well-Established.

20           In Park, the Ninth Circuit analyzed California's procedural limitations on habeas corpus

21   claims, including the Dixon rule, and found that prior to 1993, they were  "undefined and imprecise."

---

[1] Petitioner concedes that Dixon is independent of federal law.  (Doc. 28, p. 8).

[2] The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). The record of state court proceeding is a source whose accuracy cannot reasonably be questioned, and judicial notice may be taken of court records. Mullis v. United States Bank. Ct., 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir.); see also Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989); Rodic v. Thistledown Racing Club, Inc., 615 F.2d 736, 738 (6th. Cir. 1980). As such, the internet website for the California Courts, containing the court system's records for filings in the Court of Appeal and the California Supreme Court, are subject to judicial notice.  The Court has accessed the California Court of Appeal's electronic database and determined that Case No. F052491, Petitioner's direct appeal, was commenced on March 23, 2007 with the filing of the notice of appeal and that Petitioner filed his opening brief, as indicated, on August 27, 2007.

1 <u>Park</u>, 202 F.3d 1151-53. As a result, the Ninth Circuit determined that such state procedural bars

2 were neither well-established nor consistently applied prior to 1993. <u>Id.</u>  In its analysis, the Ninth

3 Circuit noted the California Supreme Court's decisions in <u>In re Clark</u>,5 Cal. 4th 750 (1993) and <u>In re</u>

4 <u>Harris</u>, 5 Cal.4th 813 (1993) and evaluated their respective impacts upon applications of the

5 untimeliness rule and the <u>Dixon</u> rule:  "These decisions were intended to 'reestablish California's

6 procedural rules governing state habeas petitions and clearly define and limit the applicable

7 exceptions.'" <u>Park</u>, 202 F.3d at 1151-52 (quoting <u>Fields</u>, 125 F.3d at 763-74).

8        The California Supreme Court decided both <u>In re Clark</u> and <u>In re Harris</u> on July 29, 1993.

9 Thus, these decisions had been the law for over fourteen years before Petitioner's procedural default

10 occurred on August 27, 2007.  The <u>Dixon</u> rule was established in 1953, when <u>Ex parte Dixon</u> was

11 decided.  <u>Ex parte Dixon</u>, 41 Cal. 2d 756.  Given the longstanding tenure of the <u>Dixon</u> rule, and the

12 California Supreme Court's decisions "clearly defin[ing] and limit[ing] its applicable exceptions,"

13 the Court concludes that the <u>Dixon</u> rule was well-established at the time of Petitioner's August 27,

14 2007 procedural default. <u>Fields</u>, 125 F.3d at 763-64.

15        b.  <u>Consistently Applied</u>.

16        The Court next considers whether the <u>Dixon</u> rule was consistently applied at the time of

17 Petitioner's procedural default.  The Ninth Circuit established a burden-shifting process to determine

18 whether a state procedural rule is adequate:

19            Once the state has adequately pled the existence of an independent and adequate state
             procedural ground as an affirmative defense, the burden to place that defense in issue shifts to
20           the petitioner.  The petitioner may satisfy this burden by asserting specific factual allegations
             that demonstrate the inadequacy of the state procedure, including citation to authority
21           demonstrating inconsistent application of the rule.  Once having done so, however, the
             ultimate burden is the state's."
22

23 <u>Bennett</u>, 322 F.3d at 586.  In the Answer, Respondent alleges that this claim is procedurally barred

24 based on the foregoing chronology of state court decisions.  Respondent's supporting attached

25 memorandum of points and authorities specifically identifies the defaulted claims and discussed the

26 applicable rules regarding a <u>Dixon</u> default. (Doc. 21, pp. 14-15).  Respondent has thus satisfied her

27 initial burden of pleading the existence of an independent and adequate state procedural ground as an

28 affirmative defense, and thereby shifted the burden to place that defense in issue to Petitioner.

1    In order to meet his burden under Bennett, Petitioner need only assert specific factual

2 allegations that demonstrate the inadequacy of the Dixon rule, including citations to authority

3 demonstrating an inconsistent application of the Dixon rule as of August 2007.  Id.   In his traverse,

4 Petitioner does indeed contend that Dixon has been inconsistently applied.  (Doc. 28, p. 8).

5 Petitioner argues that, where the claim relies upon evidence outside of the appellate record, "Dixon

6 has never been consistently and regularly applied to procedurally bar" such claims.  (Doc. 28, p. 8).

7 Such an argument, however, does not respond to Respondent's procedural default allegation.  (Id.)

8 Petitioner does not cite any specific instances where the state courts have inconsistently applied

9 Dixon, either to claims relying on appellate facts or claims relying on facts outside the appellate

10 record.

11    Moreover, Petitioner's attempt to distinguish between those two classes of claims is illogical.

12  A California appellant challenging his conviction, while limited to the appellate record, may

13 nevertheless seek to augment that record to include additional evidence supporting claims he wishes

14 to make in his direct appeal.  Indeed, in his own direct appeal, Petitioner's appellate counsel sought

15 augmentation of the record to include two additional reporter's transcripts of matters occurring on

16 February 9 and 13, 2007.  Both requests were granted by the 5th DCA. Certainly, the issue of the trial

17 court's failure to properly instruct the jury was an issue that was adequately supported in the original

18 appellate record and could have been raised in Petitioner's direct appeal.  Petitioner cites no specific

19 examples of other, similar cases in which matters outside the appellate record resulted in an

20 inconsistent application of Dixon.  Consequently, Petitioner has not met his burden of demonstrating

21 inconsistent application of the Dixon rule.[3]  Thus, the Court concludes that Respondent has

22 satisfactorily established that the state court's application of the Dixon rule was an adequate state

23 ground for rejection of Petitioner's claims.

24    4. Cause and Prejudice Exception.

25    If the respondent has asserted the procedural default doctrine in a timely and proper fashion,

_____

[3] The same burden-shifting analysis and result applies to the question of whether the Dixon rule was consistently applied at the time of Petitioner's default.  Bennett's burden-shifting analysis assesses adequacy, and adequacy relates to whether the state law ground for decision is  "well-established and consistently applied."  Bennett, 322 F.3d at 583.

1   and if the default provides an independent and adequate state procedural ground for decision, the

2   petitioner is barred from raising the defaulted claims unless he can 1) excuse the default by

3   demonstrating *cause* for the default and *actual prejudice* as a result, *or* 2) show that the case falls

4   within the category of cases the Supreme Court has characterized as fundamental miscarriages of

5   justice.  Harris, 489 U.S. at 262; Coleman, 501 U.S. at 751.  Cause is a legitimate excuse for the

6   default.  Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991).  Cause exists if the petitioner can

7   show that some objective factor external to the defense impeded efforts to comply with the state's

8   procedural rules. Coleman, 501 U.S. at 753; Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639

9   (1986); see McCleskey v. Zant, 499 U.S. 467, 493, 111 S.Ct. 1454 (1991).  Prejudice is a legitimate

10  excuse for the default.  Thomas, 945 F.2d at 1123.  Actual prejudice exists if the errors complained

11  of created more than a possibility of prejudice; they must have "worked to [the petitioner's] *actual*

12  and substantial disadvantage, infecting [the petitioner's] entire trial with error of constitutional

13  dimensions."  United States v. Frady, 456 U.S. 152, 170 (1982)

14          Here, Petitioner failed to show good cause for his failure to present Ground Two in his direct

15  appeal.  Likewise, Petitioner presents no argument for, and makes no showing of, actual prejudice.

16          5.  Fundamental Miscarriage of Justice.

17          A petitioner who cannot show cause and prejudice for his procedural default can still bring

18  his claims in a federal habeas petition if he can demonstrate that failure to consider his claims will

19  result in a "fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  "[T]he principles of

20  comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of

21  correcting a fundamentally unjust incarceration.'"  Murray, 477 U.S. at  495 (quoting Engle v. Isaac,

22  456 U.S. 107, 135, 102 S. Ct. 1558 (1982)).  A fundamental miscarriage of justice occurs when "a

23  constitutional violation has probably resulted in the conviction of one who is actually innocent."

24  Schlup v. Delo, 513 U.S. 298, 327, 115 S.Ct. 851 (1995) (quoting Murray, 477 U.S. at 495-96);

25  Boyd. v. Thompson, 147 F. 3d 1124, 1127 (9th Cir. 1998).

26          Here, Petitioner has made no claim of actual innocence.  Indeed, the evidence of Petitioner's

27  guilt was overwhelming.  Thus, it does not appear to the Court that a "constitutional violation has

28  probably resulted in the conviction of one who is actually innocent."  Schlup, 513 U.S. at 327.

1   Accordingly, even if Petitioner's allegations in the instant petition can be construed as an implicit

2   claim of actual innocence, they do not rise to the level of a "fundamental miscarriage of justice"

3   sufficient to excuse the absence of cause for the default, and the record here does not support such an

4   inference.

5          Accordingly, for the reasons stated above, the Court finds that Respondent has timely and

6   adequately raised the procedural default doctrine, and Petitioner's claims in Ground Two is

7   procedurally barred from federal habeas review.  However, even assuming, arguendo, that this claim

8   was not procedurally barred, the Court also recommends denying the claim on its merits.

9          6.  Petitioner's Claim Fails On Its Merits.[4]

10         Petitioner argues that the trial court sua sponte should have instructed the jury on self-defense

11  and necessity.  (Doc. 1, p. 6).  Petitioner contends that the prosecutor's comments in closing

12  argument that Petitioner was not entitled to assert a claim of self-defense, combined with the

13  evidence at trial that Petitioner was sprayed with an entire can of pepper spray and suffered some

14  injuries in the altercation with the victim, required the trial court to instruct on self-defense and

15  necessity and by failing to do so violated Petitioner's right to a fair trial.  (Id.).

16         The issue of whether a jury instruction is a violation of state law is neither a federal question

17  nor a proper subject for habeas corpus relief.  Estelle v. McGuire, 502 U.S. 62, 68 (1991). ("We have

18  stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting*

19  Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993)

20  (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a

21  constitutional violation, may not be corrected on federal habeas"). Indeed, federal courts are bound

22  by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th

23  Cir.), *cert. denied*, 493 U.S. 942 (1989).

24         To obtain federal collateral relief for errors in the jury charge, the petitioner must show that

25

26         [4]Where the state court does not adjudicate part or all of a petitioner's federal claim, the district court reviews that

27  claim de novo rather than by applying the AEDPA standard of review.  See Wiggin v. Smith, 539 U.S. 510, 534 (2003);
    accord, Rompilla v. Beard, 545 U.S. 374, 390 (2005); Henderson v. Cockrell, 333 F.3d 592, 601-602 (5th Cir. 2003).

28  Accordingly, because the Superior Court denied Petitioner's instructional claim citing Dixon, without ruling on the merits
    of the claim, this Court will review that claim de novo.

1    the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

2    process. Estelle, 502 U.S. at 72.  Additionally, the instruction may not be judged in artificial

3    isolation, but must be considered in the context of the instructions as a whole and the trial record. Id.

4    The Court must evaluate jury instructions in the context of the overall charge to the jury as a

5    component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982), *citing*

6    Henderson v. Kibbe, 431 U.S. 145, 154 (1977). Furthermore, even if it is determined that the

7    instruction violated the petitioner's right to due process, the petitioner can only obtain relief if the

8    unconstitutional instruction had a substantial influence on the conviction and thereby resulted in

9    actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993) (whether

10   the error had a substantial and injurious effect or influence in determining the jury's verdict.). See

11   Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of demonstrating that an

12   erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional

13   validity of a state court's judgment is even greater than the showing required to establish plain error

14   on direct appeal. Id. Moreover, a Petitioner whose claim involves the *omission* of an instruction

15   "bears an especially heavy burden," because an omission is less likely to be prejudicial than a

16   misstatement of the law. Reynolds v. Maddock, 1999 WL 354366, *3 (N.D. Cal. 1999).

17          Here, the record indicates that the jury was instructed that a custodial officer does not

18   lawfully perform his duties if he or she is using unreasonable or excessive force, that the person

19   being restrained may defend himself if the custodial officer uses unreasonable or excessive force, and

20   that the jury must find Petitioner *not* guilty on counts one through four if it also finds that the victim

21   was not lawfully performing his duties, i.e., using unreasonable or excessive force.  (LD 24, p. 197).

22   The jury was also instructed that an element of counts three and four was that Petitioner did not act

23   in self-defense.  (Id., pp. 198-199).  The jury was also given a separate self-defense instruction

24   indicating that, "[a] person does not have the right to self-defense if he or she provokes a fight or

25   quarrel with the intent to create an excuse to use force."  (Id., p. 199).  Additionally, Petitioner

26   testified to his own mental state and the injuries he sustained in the altercation with the victim and

27   defense counsel argued self-defense in closing argument.  (LD 22, p. 814).

28          It is unclear what additional instructions Petitioner would have required of the trial court nor

1    what benefit would have accrued to Petitioner had the Court acceded and given such additional self-

2    defense instructions.  The in camera discussions between the prosecutor, defense counsel, and the

3    trial court were not made part of the appellate record; accordingly, the insight, if any, that might be

4    gleaned from such discussions is absent from this record.

5          Based on the foregoing, Petitioner has failed to show that the trial court's refusal to instruct

6    the jury, sua sponte, on self-defense even rises to the level of a cognizable federal habeas issue, as

7    opposed to a mere question of California state law.  However, even assuming that he has alleged a

8    proper federal habeas issue, based on the foregoing discussion, Petitioner has failed in his burden of

9    establishing that his federal constitutional rights to due process and a fair trial were denied by the

10   Court's failure to instruct on this issue.  Moreover, even had such a failure to act constituted a

11   constitutional violation, under all the circumstances set forth above, Petitioner has not shown that the

12   error was prejudicial.  <u>Brecht</u>, 507 U.S. at 637.  For all of these reasons, the Court rejects Ground

13   Two on its merits.[5]

14         **Ground Three**          **Petitioner's sentence of 32 years to life made consecutive to**
                                      **Petitioner's earlier indeterminate sentence did not violate the**
15                                    **Eighth Amendment's prohibition against cruel and unusual**
                                      **punishment**
16

17         Petitioner next contends that his sentence of 32 years-to-life, made consecutive to the life

18   sentence he was already serving at the time he committed the instant offense, violates the federal

19   prohibition against cruel and unusual punishment contained in the Eighth Amendment to the United

20   States Constitution.  (Doc. 1).  Specifically, Petitioner contends that there was no evidence at trial

21   that his assault resulted in great bodily injury and that the use of the two prior strikes was erroneous

22

23         [5]Respondent correctly points out that Petitioner frames this claim in terms of the trial court's failure to instruct on
     self-defense and necessity, as if the terms were co-extensive.  (Doc. 21, p. 8, n. 3).  They are not. In order to establish a
24   defense of necessity, a defendant has the burden of proving that he violated the law (1) to prevent a significant evil, (2) with
     no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the
25   necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially
     contribute to the emergency.  People v. Miceli, 104 Cal.App.4th 256, 267 (2002).  As Respondent correctly observes, the
     evidence at trial does not support such a defense because Petitioner at all times had an adequate alternative, i.e., not to resist
26   the officers and to remain prone on the floor while Avila and Clausing search his cell.  Moreover, by getting up and instigating
     an altercation with Avila, Petitioner substantially contributing to the emergency, effectively creating himself the very necessity
27   he now seeks to use as a defense for his actions.  Further, it does not appear that the defense requested a necessity instruction
     nor does it appear that defense counsel sought to argue necessity as a defense at trial.  Accordingly, the Court's analysis
28   addresses only the trial court's purported error in failing to instruct on self-defense.

1  because both  convictions arose out of the same incident.  (Doc. 28, pp. 10-11).  This claim is

2  without merit.

3          A.  Procedural Default.

4          Respondent contends that, as with Ground Two, this claim should also be barred by the

5  doctrine of procedural default because, as was true with the previous claim, the state courts rejected

6  Petitioner's this ground with a citation to Dixon.  The same analysis applies to this claim as to the

7  previous claim: Dixon is both independent and adequate, the state court expressly denied the claim

8  on that basis, Respondent has timely raised the issue of a procedural bar, and Petitioner's Traverse

9  fails to identify cases in which Dixon has been inconsistently applied.  Accordingly, for the reasons

10  set forth above, the Court agrees that this claim is procedurally barred.

11          However, as with the previous claim, even if, for purposes of argument, that claim was not

12  procedurally barred, the Court would recommend denial of the claim on its merits.

13          B.  Petitioner's Sentence Does Not Violate The Eighth Amendment.

14          Petitioner first argues that no evidence was presented at trial that his assault on the victim

15  resulted in great bodily injury: i.e., Petitioner did not use a weapon nor did the victim sustain any

16  injuries consistent with great bodily injury.  (Doc. 28, p. 10).  For the conviction, however, no such

17  evidence was required.  To the contrary, the charge merely required proof that Petitioner used forced

18  that "was likely to produce great bodily injury" and that, when he acted, Petitioner "had the present

19  ability to apply forced likely to produce great bodily injury to a person."  (LD 24, p. 197).  "Great

20  bodily injury" was defined for the jury as "significant or substantial physical injury.  It is an injury

21  that is greater than minor or moderate harm."  (Id., p. 198).

22          Here, the prosecution presented evidence that part of the altercation between Petitioner and

23  Avila took place next to a 43-inch high railing and that the first tier was fifteen feet below.  Any

24  reasonable juror could have concluded that if Petitioner had successfully hoisted Avila over the

25  railing to cause him to fall to the floor fifteen feet below, or indeed even if Petitioner had

26  inadvertently caused Avila to fall, that Avila would "likely" have suffered "significant" or

27  "substantial physical injury."  To contend otherwise is specious.

28          However, the Court need not go that far, since Petitioner has never directly contended that the

1   evidence of "likelihood" to produce great bodily injury was insufficient at trial. Rather, he has

2   skirted that issue by instead contending that insufficient evidence of the probability of serious bodily

3   injury is a circumstance that makes his sentence excessive and unconstitutional. However,

4   employing the analysis required by the United States Supreme Court for Eighth Amendment

5   contentions, the Court concludes that Petitioner's sentence was neither.

6          In two companion cases, Lockyer v. Andrade, 538 U.S. 63, and Ewing v. California, 538 U.S.

7   11 (2003), the Supreme Court provided guidance in applying Eighth Amendment jurisprudence to

8   California's Three Strikes law in habeas cases. In Ewing, the Supreme Court explained that while

9   the constitutional principle of proportionality between crime and sentence applies to noncapital

10  sentences, "[t]he Eighth Amendment does not require strict proportionality between crime and

11  sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."

12  Ewing, 538 U.S. at 23 (citations omitted). The gross disproportionality principle applies "only in the

13  'exceedingly rare' and 'extreme' case." Andrade, 538 U.S. at 73 (citations omitted).

14         Applying these standards, in Ewing, the Supreme Court rejected the defendant's claim that a

15  sentence of 25 years-to-life for stealing nearly $1,200 worth of golf clubs was "grossly

16  disproportionate" to his crime where the defendant had previously been convicted of three residential

17  burglaries and a robbery. Ewing, 538 U.S. at 18. Similarly, in Andrade the Court reversed the Ninth

18  Circuit's grant of habeas relief to a defendant sentenced to two consecutive 25 years-to-life sentences

19  for two petty theft convictions for stealing five videotapes worth less than $85, and four video tapes

20  worth less than $70, respectively.

21         In Andrade, the Supreme Court concluded that the state court decision upholding the

22  sentence was not "contrary to" the governing legal principles set forth in Supreme Court cases.

23  Andrade, 538 U.S. at 73-74. The Supreme Court also held that the state appellate court did not

24  "unreasonably appl[y]" the gross disproportionality principle to Andrade's case since that principle

25  "gives legislatures broad discretion to fashion a sentence that fits within the scope of the

26  proportionality principle–the 'precise contours' of which 'are unclear.'" Id., 538 U.S. at 75-77.

27  According to the Supreme Court, "it was not objectively unreasonable for the California Court of

28  Appeal to conclude that these 'contours' permitted an affirmance of Andrade's sentence." Id. In

1   addition to Andrade and Ewing, the Supreme Court has also upheld a life sentence under Texas's

2   habitual offender statute for obtaining $120 by false pretenses, Rummel v. Estelle, 445 U.S. 263

3   (1980), and a life sentence *without the possibility of parole* for possession of cocaine.  Harmelin v.

4   Michigan, 501 U.S. 957 (1991).

5       In 2004, the Ninth Circuit held that a Three Strikes sentence of 25 years-to-life for a third

6   offense of shoplifting a $199 VCR was cruel and unusual punishment.  Ramirez v. Castro, 365 F.3d

7   755 (9th Cir. 2004).  The Ramirez petitioner's criminal history consisted of two convictions for

8   second-degree robbery as a result of a single guilty plea entered before the Three Strikes law was

9   enacted.  In that case, the prosecution used two 1991 shoplifting convictions to charge the petitioner

10  in 1995 with one count of petty theft with a prior theft-related conviction. (Cal. Pen. Code § 666).

11  The jury found the two 1991 shoplifting convictions were strikes, the trial court refused to strike

12  either of them, and sentenced the petitioner to 25 years-to-life. Ramirez v. Castro, 365 F.3d at 756.

13      Prior to his third-strike sentence, the petitioner had never been sentenced to prison, and had

14  been incarcerated only one time in the county jail. In finding the sentence unconstitutional, the Ninth

15  Circuit determined that the state court unreasonably applied the gross proportionality principle to the

16  "unique facts of Ramirez's case." Id. at 774.

17      By contrast, in another 2004 case, the Ninth Circuit held that a Three Strikes sentence of 25

18  years-to-life for a third "wobbler" offense did not constitute cruel and unusual punishment, because

19  the petitioner had a lengthy criminal history, had been incarcerated several times, and the strikes used

20  to enhance the petitioner's sentence involved the threat of violence. Rios v. Garcia, 390 F.3d 1082,

21  1086 (9th Cir. 2004).

22      Here, Petitioner was convicted of assaultive behavior that could easily have resulted in the

23  victim's death; at the time of the assault, he was an inmate serving a life sentence; there was strong

24  evidence that Petitioner provoked the incident resulting in the victim's injuries; and, finally,

25  Petitioner's long and serious criminal history shows that he is precisely the type of individual for

26  whom California's Three Strikes law was intended.[6]

27

28      [6]As the Supreme Court stated in Ewing, "[i]n weighing the gravity of Ewing's offense, we must place on the scales not only his current felony, but also his long history of felony recidivism."  Ewing, 538 U.S. at 29.

1    In light of the above jurisprudence, the Court concludes that Petitioner's sentence here is not

2    grossly disproportionate to the offense and therefore the Court must conclude that the sentence

3    imposed in this case and affirmed by the state courts did not offend the Eighth Amendment.

4    Petitioner's case is not "the rare case in which a threshold comparison of the crime committed and

5    the sentence imposed leads to an inference of gross proportionality."  Harmelin, 501 U.S. at 1005.

6    Finally, Petitioner maintains that the use of two prior strikes was erroneous because both

7    arose out of the same incident.  (Doc. 28, p. 10).  This argument is also without merit.

8    In People v. Benson, 18 Cal. 4th 24 (1998), the California Supreme Court, construing

9    California's Three Strikes Law, rejected a defendant's contention that, because two prior serious or

10   violent felony convictions arose out of the same criminal transaction and therefore multiple

11   punishments were prohibited under California Penal Code § 654, his sentence could not be enhanced

12   using both convictions, as follows:

13       In our view, the language of section 1170.12, subdivision (b)(1), unequivocally establishes
         that the electorate intended to qualify as separate strikes each prior conviction that a
14       defendant incurred relating to the commission of a serious or violent felony, notwithstanding
         the circumstances that the trial court, in the earlier proceeding, may have stayed sentence on
15       one or more of the serious or violent felonies under compulsion of the provisions of section
         654.
16

17   Benson, 18 Cal. 4th at 31.

18   At sentencing, the trial court considered that Petitioner had three prior strike convictions, all

19   apparently arising out of a 1993 incident that resulted in convictions for attempted murder with

20   personal use of a firearm, robbery, and attempted robbery.  (LD 23, p. 1005).  Petitioner's trial

21   counsel, after acknowledging that the three prior 1993 strike convictions involved separate victims,

22   argued that all "arose out of the same consecutive line of conduct" and therefore asked that they be

23   considered "as a single strike" for sentencing purposes.  (LD 23, p. 1004).

24   The Court must follow California's interpretation of its own statutes, as evidenced by the

25   Benson court's holding.  The three 1993 convictions were separate, for purposes of California's

26   Three Strikes Law.  Petitioner does not cite, and the Court is not aware, of any authority that required

27   the trial court here to consider all three convictions as a single "strike" for sentencing purposes.

28   ///

1      **Ground Four**          **Petitioner was not denied the effective assistance of appellate**
2                               **counsel**

3          Finally, Petitioner maintains that he was denied his constitutional right to the effective

4   assistance of appellate counsel because Petitioner contends, his appellate attorney wrongfully refused

5   to raise on appeal the issues of cruel and unusual punishment and failure to instruct on self-defense.

6   This contention also lacks merit.

7          **A.   The Standard For Ineffective Assistance of Counsel**.

8          Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

9   Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective

10  assistance of appellate counsel are reviewed according to Strickland 's two-pronged test. Miller v.

11  Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th

12  Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been

13  actually or constructively denied the assistance of appellate counsel altogether, the Strickland

14  standard does not apply and prejudice is presumed; the implication is that Strickland does apply

15  where counsel is present but ineffective).

16         To prevail, Petitioner must show two things. First, he must establish that appellate counsel's

17  deficient performance fell below an objective standard of reasonableness under prevailing

18  professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, Petitioner must

19  establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's

20  unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a

21  probability sufficient to undermine confidence in the outcome of the appeal. Id. The relevant inquiry

22  is not what counsel could have done; rather, it is whether the choices made by counsel were

23  reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

24         With the passage of the AEDPA, habeas relief may only be granted if the state-court decision

25  unreasonably applied this general Strickland standard for ineffective assistance.  Knowles v.

26  Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009).  Accordingly, the question "is not whether a

27  federal court believes the state court's determination under the Strickland standard "was incorrect but

28  whether that determination was unreasonable–a substantially higher threshold."  Schriro v.

1   Landrigan, 550 U.S. 465, 473 (2007); Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. at 1420.  In

2   effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that

3   the state court determination was erroneous, but also that it was objectively unreasonable.

4   Yarborough v. Gentry, 540 U.S. 1, 5 (2003).  Moreover, because the Strickland standard is a general

5   standard, a state court has even more latitude to reasonably determine that a defendant has not

6   satisfied that standard.  See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[E]valuating

7   whether a rule application was unreasonable requires considering the rule's specificity.  The more

8   general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

9       In cases such as this, where the challenge is to the effective assistance of appellate counsel,

10   the same standards apply as with the claims of ineffective assistance of trial counsel.  Smith v.

11   Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527 (1986).   There can be no Sixth

12   Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless

13   argument.  See Shah v. United States, 878 F.2d 1156, 1162 (9th Cir.1989); Rodriguez v. United

14   States, 17 F.3d 225, 226 (8th Cir.1994).   Moreover, in Smith, the United States Supreme Court

15   indicated that an appellate attorney filing a merits brief need not and should not raise every non-

16   frivolous claim.  Robbins, 528 U.S. at 288.  Rather, an attorney may select from among them in order

17   to maximize the likelihood of success on appeal.  Id.  As a result, there is no requirement that an

18   appellate attorney raise issues that are clearly untenable.  Gustave v. United States, 627 F.2d 901,

19   906 (9th Cir. 1980).

20       **B.  Petitioner Was Not Denied the Effective Assistance of Counsel**.

21       Applying the foregoing principles, it is patent that appellate counsel was not ineffective.

22   Petitioner contends that appellate counsel was ineffective in failing or refusing, to pursue his claims

23   that the trial court erred in refusing to give a self-defense instruction and that his sentence was

24   unconstitutional.  However, the Court has already considered both of those contentions and found

25   them to be without merit.  Since there can be no Sixth Amendment deprivation of effective counsel

26   based on an attorney's failure to raise a meritless argument, and since both argument that form the

27   basis of Petitioner's claim are meritless, then, *ipso facto*, there is no ineffective assistance of

28   appellate counsel in this case.  See Shah, 878 F.2d at 1162; Rodriguez, 17 F.3d at 226.

1

## RECOMMENDATION

2      Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus

3 (Doc. 1), be DENIED on the merits.

4      This Findings and Recommendation is submitted to the United States District Court Judge

5 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the

6 Local Rules of Practice for the United States District Court, Eastern District of California.  Within

7 twenty (20) days after being served with a copy of this Findings and Recommendation, any party

8 may file written objections with the Court and serve a copy on all parties.  Such a document should

9 be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the

10 Objections shall be served and filed within ten (10) court days (plus three days if served by mail)

11 after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to

12 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified

13 time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153

14 (9th Cir. 1991).

15

16 IT IS SO ORDERED.

17 Dated:   __June 13, 2011__                            ___/s/ Jennifer L. Thurston___
                                                          UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25

26

27

28